**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| ANAMARIA LIZARRAGA,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. 16-cv-06561-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT; REVERSING THE DENIAL OF BENEFITS; AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS**<br><br>[Re: ECF 12, 14] |

Plaintiff Anamaria Lizarraga, proceeding through counsel, appeals a final decision of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, denying her application for a period of disability and disability insurance benefits under Title II of the Social Security Act. Before the Court are Plaintiff's motion for summary judgment (ECF 12) and Defendant's cross-motion for summary judgment (ECF 14). Plaintiff did not file a reply brief within the time provided in the procedural order issued by the Court (ECF 3). The matter was submitted without oral argument pursuant to Civil Local Rule 16-5.

For the reasons discussed below, the Court GRANTS IN PART AND DENIES IN PART Plaintiff's motion; DENIES Defendant's cross-motion; REVERSES the denial of benefits; and REMANDS for further administrative proceedings.

## I. BACKGROUND

Plaintiff was born on November 15, 1963, graduated from high school, and completed college courses. Admin. Record ("AR") 42. She is married and has no dependent children. *Id.* She has past relevant work as a Case Aide and an ESL Teacher.[1] AR 69.

Plaintiff filed a claim for disability insurance benefits on December 27, 2012, alleging disability beginning May 1, 2011. AR 166-72, 181. She claims several impairments, including a history of recurrent strokes, symptoms associated with migraine headaches, piriformis syndrome, myofascial pain syndrome, fibromyalgia syndrome, asthma, and a depressive disorder. AR 15.

Plaintiff's application was denied initially and upon reconsideration. AR 89, 106. She requested and received a hearing before an administrative law judge ("ALJ"), which was held on December 9, 2014. AR 13. The ALJ heard testimony from three individuals: Plaintiff; Irvin Belzer, M.D., a medical expert; and Thomas Dachelet, a vocational expert ("VE"). *Id.* The ALJ issued a written decision on March 19, 2015, finding that Plaintiff was not disabled and therefore was not entitled to benefits. AR 13-27. The Appeals Council affirmed the ALJ's decision, making it the final decision of the Commissioner. AR 1-7. Plaintiff filed this action on November 11, 2016.

## II. LEGAL STANDARD

### A. Standard of Review

Pursuant to sentence four of 42 U.S.C. § 405(g), district courts "have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 USC § 405(g). However, "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). Federal courts "'leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record.'" *Id.* (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775

---

[1] Plaintiff claimed past relevant work as a "social worker," AR 42, but because she was not certified, the vocational expert who testified at the administrative hearing classified that position as a "case aide," AR 68-69.

F.3d 1090, 1098 (9th Cir. 2014)).

A court "will disturb the Commissioner's decision to deny benefits only if it is not supported by substantial evidence or is based on legal error." *Brown-Hunter*, 806 F.3d at 492 (internal quotation marks and citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and must be more than a mere scintilla, but may be less than a preponderance." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015) (internal quotation marks and citations omitted). A court "must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.* (internal quotation marks and citation omitted). If the evidence is susceptible to more than one rational interpretation, the ALJ's findings must be upheld if supported by reasonable inferences drawn from the record. *Id.*

Finally, even when the ALJ commits legal error, the ALJ's decision will be upheld so long as the error is harmless. *Brown-Hunter*, 806 F.3d at 492. However, "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Id.* The court is "constrained to review the reasons the ALJ asserts." *Id.*

### B. Standard for Determining Disability

"To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, determining: (1) whether the claimant is doing substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments that has lasted for more than 12 months; (3) whether the impairment meets or equals one of the listings in the regulations; (4) whether, given the claimant's residual functional capacity, the claimant can still do his or her past relevant work; and (5) whether the claimant can make an adjustment to other work." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (internal quotation marks and citations omitted). The residual functional capacity ("RFC") referenced at step four is what a claimant can still do despite his or her limitations. *Id.* at 1160 n.5. "The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

## III. DISCUSSION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from her alleged onset date, May 1, 2011, through her date last insured, September 30, 2014. AR 15. At step two, the ALJ found that Plaintiff had the following severe impairments through her date last insured: "history of recurrent strokes; possible ischemic neurological deficits or paralysis associated with migraine headaches; piriformis syndrome; myofascial pain syndrome; and asthma." *Id.* However, the ALJ found that Plaintiff's claimed fibromyalgia syndrome was not medically determinable based on the evidence in the record. AR 17-18. The ALJ also found that Plaintiff's medically determinable depressive disorder was non-severe. AR 15. At step three, the ALJ concluded that Plaintiff's impairments did not meet or medically equal the severity of one of the listed impairments in the regulations. AR 18-19.

Prior to making a step four determination, the ALJ found that Plaintiff had the RFC to perform a reduced range of light work. AR 19. Light work is defined in the regulations as follows:

> Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

The ALJ found that Plaintiff can perform these activities with the following limitations: she can sit for 6 to 8 hours per day but she needs breaks every 2 hours for 1 to 3 minutes; she can stand or walk up to 4 hours per 8-hour workday, but only for 1 hour at a time; she can perform manipulative activities (reaching, handling, fingering, pushing, pulling) only occasionally; she can use foot controls only occasionally; she can climb stairs or ramps, stoop, kneel, crouch, or crawl only occasionally; she cannot climb ladders or scaffolds; she should not be around unprotected heights or moving mechanical parts; she can drive a motor vehicle only occasionally; and she should be exposed only occasionally to humidity, wetness, extreme cold or heat, vibrations, or

4

respiratory irritants. AR 19-22. In determining this RFC, the ALJ discounted Plaintiff's claims that she suffers from fibromyalgia syndrome and that her depression constitutes a severe mental impairment. AR 23-24.

Based on the above RFC and the testimony of the VE, the ALJ found at step four that Plaintiff was capable of performing her past relevant work as a Case Aide and ESL Teacher. AR 25-26. The ALJ made an alternative step five determination that Plaintiff could perform other jobs that exist in the national economy. *Id.* The ALJ therefore found that Plaintiff was not disabled from her alleged onset date through her date last insured. AR 26-27.

Plaintiff asserts that the ALJ's decision is legally insufficient because: (a) the ALJ's determination that Plaintiff is limited to walking and standing for 4 hours a day is inconsistent with the determination that Plaintiff can perform light work activity; (b) all of the relevant medical opinions support Plaintiff's claim of severe mental impairment and the ALJ's rejection of those opinions is not supported by substantial evidence in the record; (c) the ALJ erred in failing to consider the effect of Plaintiff's mental impairment on her ability to work; (d) the ALJ erred in finding that Plaintiff's claimed fibromyalgia syndrome was not medically determinable; and (e) the ALJ failed to develop the record fully as to Plaintiff's claim that she suffers from fibromyalgia syndrome. The Court addresses those arguments in turn.

## A. RFC Determination

As discussed above, the ALJ determined that Plaintiff retains the RFC to perform a reduced range of light work, imposing among others a limitation that Plaintiff can stand or walk up to 4 hours per 8-hour workday for at most 1 hour at a time. AR 19. Plaintiff asserts that the 4-hour stand/walk limitation is incompatible with an RFC of light work, because "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *6. "Consequently," Plaintiff argues, "the ALJ made an error of law by finding an RFC of light work when she concurrently limited Claimant to walking and standing for 4 hours in an 8-hour day." Pl.'s MSJ at 5, ECF 12.

In response, Defendant cites numerous cases affirming decisions in which the ALJ found

5

the claimant capable of a reduced range of light work. *See* Def.'s XMSJ at 5, ECF 14 (collecting cases). For example, in *Avilez v. Colvin*, No. EDCV 14-0732-JPR, 2015 WL 1966916, at *6 (C.D. Cal. Apr. 30, 2015), the ALJ determined that Avilez had the RFC to perform a limited range of light work, those limitations including a restriction that Avilez could stand or walk only 2 hours in an 8-hour workday. Relying on SSR 83-10, Avilez argued to the district court that "because light work in most cases requires approximately six hours of standing or walking," the ALJ had violated "agency policy" by assigning an RFC of light work while simultaneously restricting standing and walking to 2 hours per day. *Id.* The district court rejected that argument, noting that "[a]lthough most light work requires more standing and walking than the ALJ found Plaintiff able to perform, some light-work positions require no more than two hours of standing and walking." *Id.* Similarly, in *Jones v. Colvin*, No. ED CV 13-722-SP, 2014 WL 657914, at *7 (C.D. Cal. Feb. 19, 2014), the district court concluded that a light work RFC with a 4-hour stand/walk limitation did not conflict with SSR 83-10. The court observed that "the ALJ did not determine that plaintiff could perform the full range of light work, but simply 'a range of light work.'" *Id.*

Based on the cases cited by Defendant, and absent citation to contrary authority by Plaintiff, this Court concludes that it is not per se legal error to determine that a claimant has the RFC to perform a reduced range of light work which includes a 4 hour stand/walk limitation.

**B.  Determination that Mental Impairment is Non-Severe**

At step two, the ALJ concluded that Plaintiff's claimed mental impairment of depressive disorder was non-severe. AR 15. Plaintiff argues that all of the relevant medical opinions support her claim of severe mental impairment and the ALJ's rejection of those opinions is not supported by substantial evidence in the record.

The ALJ noted in her written decision that the file contained opinions from three mental health professionals: Plaintiff's treating psychiatrist, Frank Read, M.D., and two agency consulting psychiatrists, Jay Flocks, M.D., and G.R. Ibarra, M.D. AR 16-17. Dr. Read completed a Medical Source Statement Regarding A Mental Impairment on March 7, 2014, stating that he began treating Plaintiff in August 2007 and last had treated her on February 28, 2014. AR 1015. Dr. Read opined that Plaintiff had a substantial loss of the following abilities: "ability to make

6

judgments that are commensurate with the functions of unskilled work, i.e., simple work-related decisions"; "ability to respond appropriately to supervision, co-workers and usual work situations"; and "ability to deal with changes in a routine work setting." *Id.* He also found that Plaintiff was "Markedly Limited" in 12 of 20 activities, including: "ability to understand and remember detailed instructions"; "ability to maintain attention and concentration for extended periods"; "ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances"; and "ability to get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes." AR 1016-17. Dr. Read estimated that Plaintiff would miss 4 or more days of work per month as a result of her mental impairment. AR 1015. Finally, Dr. Read opined that Plaintiff's global assessment of functioning ("GAF") score was 41-50, AR 1015, which the ALJ recognized indicated "Serious symptoms," AR 17.

Dr. Flocks and Dr. Ibarra found Plaintiff to suffer from "a moderate mood disorder with depressive symptoms predominating," and opined that she was limited to performing "simple repetitive task[s] with adequate pace and persistence." AR 85, 102. The ALJ summarized the agency psychiatrists' opinions as stating that Plaintiff suffered "from a severe depressive disorder." AR 17.

The ALJ acknowledged that all three mental health professionals had found Plaintiff to suffer from severe mental impairments. AR 17. However, the ALJ gave each of the three medical opinions "little weight," and instead concluded that "[t]he claimant's medically determinable mental impairment of depressive disorder did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and was therefore non-severe." AR 15-17. *Id.*

"To reject an uncontradicted opinion of a treating physician, the ALJ must provide clear and convincing reasons that are supported by substantial evidence." *Ghanim*, 763 F.3d at 1160-61 (internal quotation marks and citation omitted). With respect to Dr. Read's opinion, the ALJ stated that "[t]he problem with this opinion is that the GAF score given and the markedly limited ratings are not supported by the treatment given by Dr. Read." AR 17. The ALJ characterized Dr. Read's treatment as "limited to infrequent follow-up visits with Dr. Read and minimal use of anti-

depressant medications." *Id.* The ALJ also stated that "objective evidence or even his own treatment notes and treatment recommendations do not support the opinions of Dr. Read." *Id.* Finally, the ALJ stated her own opinion that "[i]f the claimant had truly had serious symptoms or serious impairment in social, occupational, or school functioning, she would be institutionalized or in some sort of intensive outpatient program to help her cope with these serious symptoms." *Id.*

"A conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician or another treating provider." *Ghanim*, 763 F.3d at 1161. However, the ALJ failed to identify substantial evidence of such a conflict here. While the record includes treatment notes from Dr. Read only through November 2012, AR 271-322, Dr. Read's medical source statement dated March 7, 2014 indicated that he last had treated Plaintiff on February 28, 2014, AR 1015. Plaintiff testified at the administrative hearing on December 9, 2014 that she was continuing to see Dr. Read in person every 3-5 months, she spoke with him by telephone at least 1 time a month, and she emailed him for prescription refills. AR 58-59. Plaintiff testified specifically that she had spoken with Dr. Read the week prior to the administrative hearing. AR 59. The ALJ apparently disregarded both Dr. Read's representation of treatment through 2014 and Plaintiff's testimony re same in concluding that Dr. Read's treatment was "limited to infrequent follow-up visits." The ALJ's reason for disregarding this evidence is unclear, since the ALJ cited only to Dr. Read's treatment notes when characterizing the nature and frequency of Dr. Read's treatment. Defendant has not cited, and this Court has not discovered, any authority for the proposition that a "conflict" is created with respect to otherwise consistent medical evidence simply because not all treatment notes are included in the administrative record.

Moreover, although the ALJ cited Dr. Read's minimal use of antidepressant medication as a reason to disregard Dr. Read's opinion regarding the severity of Plaintiff's mental impairment, the ALJ provided no basis for her underlying assumption that more antidepressant medication would have been prescribed if Plaintiff indeed had a serious mental impairment. The ALJ likewise provided no basis for her statement that if Plaintiff had a serious mental impairment, "she would be institutionalized or in some sort of intensive outpatient program." AR 17. "An ALJ

8

cannot substitute his own opinion for that of the medical experts by disregarding evidence in the record." *Winkowitsch-Smith v. Barnhart*, 113 F. App'x 765, 767 (9th Cir. 2004); *see also Gomez v. Colvin*, No. 1:15-CV-00647-SKO, 2016 WL 3196770, at *17 (E.D. Cal. June 8, 2016) (ALJ erred in rejecting multiple diagnoses of PTSD based on ALJ's own opinion that an individual who had never been in combat could not suffer from PTSD). "Sheer disbelief is no substitute for substantial evidence." *Winkowitsch-Smith*, 113 F. App'x at 767 (internal quotation marks and citation omitted).

Finally, the ALJ's general statement that Dr. Read's opinion was unsupported by "objective evidence" or Dr. Read's "treatment notes" is not sufficiently specific to constitute substantial evidence to reject Dr. Read's medical opinion. Similarly, the ALJ's statement that "objective medical evidence of record does not support" the two state agency psychiatrists' opinions does not constitute substantial evidence to reject those opinions. AR 17. Absent citation to specific portions of the very lengthy administrative record, which totals more than 1200 pages, the Court cannot discern what conflicts in the evidence the ALJ perceived. *See Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014) ("[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while . . . criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion.").

Accordingly, the Court concludes that the ALJ erred by failing to credit the three uncontradicted mental health opinions without providing clear and convincing reasons, supported by substantial evidence, for doing so. The Court notes that Defendant's brief contains numerous citations to record evidence which Defendant contends supports the ALJ's determination that Plaintiff's mental impairment was non-severe. *See* Def.'s XMSJ at 6-7, ECF 14. That evidence may have provided an adequate basis for rejection of the mental health opinions had the ALJ expressly cited and relied on it. However, the ALJ did not do so. As discussed above, "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Brown-Hunter v. Colvin*, 806 F.3d at 492. The court is "constrained to review the reasons the ALJ asserts." *Id.*

**C. Failure to Consider Effect of Mental Impairment on Ability to Work**

Plaintiff argues that even if her mental impairment properly was found to be non-severe, the ALJ erred in failing to consider the effect of the mental impairment on Plaintiff's ability to work. The step two determination whether particular impairments are "severe" or "non-severe" is "not meant to identify the impairments that should be taken into account when determining the RFC." *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017). When determining a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Id.* at 1049 (internal quotation marks and citation omitted). "The RFC therefore *should* be exactly the same regardless of whether certain impairments are considered 'severe' or not." *Id.*

The ALJ did not include any limitations resulting from Plaintiff's mental impairment in the RFC determination. Given the Court's conclusion that the ALJ improperly rejected the uncontradicted mental health opinions that Plaintiff suffered from a severe mental impairment, the ALJ's failure to include any mental limitation in the RFC clearly was in error.

**D. Determination that Fibromyalgia Syndrome not Medically Determinable**

At step 2, the ALJ determined that Plaintiff's claimed fibromyalgia syndrome was not medically determinable based on the evidence in the record. AR 17-18. Plaintiff asserts that the ALJ erred in making that determination because the ALJ failed to comply with SSR 99-2p. SSR 99-2p addresses the criteria for evaluating a claim of disability based on Chronic Fatigue Syndrome ("CFS"). *See* SSR 99-2p, 1999 WL 271569. As Defendant points out, SSR 12-2p, which became effective on July 25, 2012, "provides guidance on how we develop evidence to establish that a person has a medically determinable impairment (MDI) of fibromyalgia (FM), and how we evaluate FM in disability claims and continuing disability reviews under titles II and XVI of the Social Security Act (Act)." SSR 12-2p, 2012 WL 3104869, at *1. The ALJ expressly applied the criteria set forth in SSR 12-2p when concluding that Plaintiff's alleged fibromyalgia syndrome is not medically determinable. AR 18. Plaintiff's claim that the ALJ failed to comply with SSR 99-2p, which is not applicable here, is insufficient to establish legal error by the ALJ.

**E.     Failure to Develop the Record re Fibromyalgia Syndrome**

Finally, Plaintiff argues that the ALJ failed to develop the record with respect to Plaintiff's claim of fibromyalgia syndrome. The ALJ noted that under SSR 12-2p, a claimant's evidence must satisfy one of two alternative sets of diagnostic criteria to establish a medically determinable impairment of fibromyalgia syndrome. AR 17-18. The ALJ concluded that the first set of criteria was not met because it required at least 11 positive tender points on physical examination and there was no notation regarding tender points on the questionnaire submitted by Plaintiff's physician, Dr. Nguyen. *Id.* The ALJ concluded that the second set of criteria was not met because it required that other disorders be excluded, and Plaintiff had not presented evidence excluding other disorders. *Id.* Plaintiff argues that the ALJ should have developed the record as to whether Plaintiff did or did not have tender points sufficient to satisfy the first set of criteria.

"The ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal quotation marks and citation omitted). "This duty extends to the represented as well as to the unrepresented claimant." *Id.* However, it is the claimant's duty to prove disability. *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Id.*

Dr. Nguyen clearly did not base the diagnosis of fibromyalgia syndrome on the presence of tender points, as Dr. Nguyen did not check the box for that symptom on the questionnaire submitted for administrative review. AR 1241. Dr. Nguyen checked the boxes for 13 other symptoms in support of the fibromyalgia diagnosis. *Id.* Accordingly, this is not a case in which the evidence was ambiguous or the record was inadequate to allow for evaluation of the evidence. There simply was a failure of proof on Plaintiff's part with respect to the claimed impairment of fibromyalgia. Plaintiff's failure of proof was not sufficient to trigger the ALJ's duty to develop the record. *See Cole v. Colvin*, No. 6:15-CV-01044-PA, 2016 WL 4154934, at *7 (D. Or. Aug. 2, 2016) ("Plaintiff's failure to carry her burden of proof, however, does not equate with an ambiguity or inadequacy in the record.").

### F. Appropriate Remedy

As discussed above, the ALJ erred in rejecting the mental health opinions of severe mental impairment without providing clear and convincing reasons for doing so, supported by substantial evidence in the record. The Court must decide whether that error was harmless and, if not, the appropriate remedy. "An error is harmless only if it is inconsequential to the ultimate nondisability determination, or if despite the legal error, the agency's path may reasonably be discerned." *Brown-Hunter*, 806 F.3d at 494 (internal quotation marks and citations omitted). Here, the error was not harmless, because it went to key evidence regarding Plaintiff's claimed mental impairment. Moreover, the Court cannot discern the agency's path absent appropriate consideration of all relevant evidence of record. The Court therefore must determine the appropriate remedy.

Plaintiff requests that the case be remanded to the Commissioner for an immediate award of benefits. A remand for an immediate award of benefits may be appropriate in the "rare circumstances" in which the following three requirements are met: (1) "the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion"; (2) "the record has been fully developed and further administrative proceedings would serve no useful purpose"; and (3) "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* at 495 (internal quotation marks and citation omitted). Even if all three requirements are satisfied, the Court "retain[s] flexibility in determining the appropriate remedy." *Id.* (internal quotation marks and citation omitted). The Court "may remand on an open record for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* (internal quotation marks and citation omitted).

The Court concludes that a remand for further proceedings is appropriate here. The first factor clearly is met, as the ALJ failed to provide legally sufficient reasons for failing to credit the mental health opinions of severe mental impairment. However, the second and third factors are not met, as the record has not been fully developed and it is unclear whether crediting the mental health opinions would require a finding of disability. The ALJ relied on the VE's testimony to

12

conclude that Plaintiff can perform her past relevant work and other work in the national economy. AR 67-71.  However, the VE's opinion was based on an RFC which did not include limitations arising from Plaintiff's mental impairment.  *Id.*  Plaintiff's counsel did ask the VE whether his opinion of Plaintiff's employability would be affected if, in addition to the physical limitations encompassed by the RFC, there were also mental limitations.  AR 71-72.  Counsel gave some hypothetical limitations drawn from Dr. Read's opinion, including inability to complete a normal workday, inability to perform at a consistent pace without an unreasonable number or length of rest periods, and absences from work of four or more days per month.  *Id.*  The VE stated that the presence of such limitations would affect Plaintiff's employability.  AR 72.  However, he did not state precisely *how* employability would be affected.  *Id.*  Consequently, it is not clear from the record whether inclusion of mental limitations in Plaintiff's RFC would result in a determination that Plaintiff cannot perform her past relevant work or other work in the national economy.

Accordingly, the Court will grant in part and deny in part Plaintiff's motion for summary judgment and will deny Defendant's cross-motion for summary judgment.  Pursuant to sentence four of 42 U.S.C. § 405(g), the Court will reverse the denial of benefits and remand for further administrative proceedings consistent with this order.  42 U.S.C. § 405(g) (sentence four) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.").

IV. **ORDER**

(1) Plaintiff's motion for summary judgment is GRANTED IN PART AND DENIED IN PART;

(2) Defendant's motion for summary judgment is DENIED;

(3) The denial of benefits is REVERSED; and

(4) The matter is REMANDED to the Commissioner for proceedings consistent with this order.

Dated:  February 12, 2018

BETH LABSON FREEMAN
United States District Judge

13